## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF THE
UNITED STATES FOR AN ORDER
PURSUANT TO 18 U.S.C. § 2705(b)

Misc. Case No.:

Case: 1:24–mc–00058
Assigned To : Boasberg, James E.
Assign. Date : 5/6/2024
Description: Misc. Case (O–DECK)

### MOTION TO INTERVENE AND FOR UNSEALING

Pursuant to Federal Rule of Civil Procedure 24(b), Local Civil Rule 7(j), and Local Criminal Rule 57.6, Empower Oversight Whistleblowers & Research respectfully requests that the Court permit it to intervene in this matter for the purpose of requesting that the Court unseal certain documents.  As set forth in the accompanying memorandum, Empower Oversight seeks the unsealing of motions that the Department of Justice filed requesting non-disclosure orders related to subpoena number GJ2017091241939.

Pursuant to Local Civil Rule 7(m), counsel for Empower Oversight conferred with counsel for DOJ, who stated the following regarding DOJ's position on the requested relief: "the Department will wait until it has seen your motion and the arguments in support of it before it takes a position."

May 2, 2024

Respectfully submitted,

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel.: (202) 787-1060
Email: bfield@schaerr-jaffe.com

*Counsel for Empower Oversight*
*Whistleblowers & Research*

## CERTIFICATE OF SERVICE

I, Brian Field, certify that on May 2, 2024, a true and correct copy of the foregoing Motion to Intervene and for Unsealing and the accompanying Memorandum in Support was served by U.S. Mail, certified postage prepaid, electronic return receipt requested, on the following counsel for the U.S. government, with a courtesy copy transmitted by electronic mail, to:

> Gregg Maisel
> Deputy Chief, Criminal Division
> Chief, National Security Section
> U.S. Attorney's Office – DC
> 601 D Street, NW
> Washington, DC 20579
> Gregg.Maisel@usdoj.gov
>
> Jennifer Kennedy Gellie
> Executive Deputy Chief
> Counterintelligence & Export Control Section
> National Security Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530
> jennifer.gellie@usdoj.gov

*/s/ Brian J. Field*
Brian J. Field

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | Misc. Case No.: 17-2272-RMM |

**MEMORANDUM IN SUPPORT OF EMPOWER OVERSIGHT'S
MOTION TO INTERVENE AND FOR UNSEALING**

# TABLE OF CONTENTS

BACKGROUND ................................................................................................ 1

LEGAL STANDARDS ..................................................................................... 5

ARGUMENT .................................................................................................... 6

I.    Empower Oversight Should Be Allowed to Intervene for the Purpose of
Asserting the Public's Right of Access.......................................................... 8

II.   The Documents in This Case Should be Unsealed. ....................................... 12

    A.   The Sealed Records Are Judicial Records.................................................... 13

    B.   The *Hubbard* Factors Weigh in Favor of Disclosure.................................. 13

    C.   The First Amendment Right of Access Compels Disclosure...................... 19

    D.   The Court May Also Unseal Pursuant to its Discretionary
Disclosure Authority.................................................................................... 23

CONCLUSION................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Appl. of N.Y. Times,*
   585 F. Supp. 2d 83 (D.D.C. 2008) ..................................................................... 17, 23

*Aristotle Int'l, Inc. v. NGP Software, Inc.,*
   714 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................... 10, 11

*Berliner Corcoran & Rowe LLP v. Orian,*
   662 F. Supp. 2d 130 (D.D.C. 2009) ......................................................................... 18

*Cable News Network, Inc. v. Fed. Bureau of Investigation,*
   984 F.3d 114 (D.C. Cir. 2021) ................................................................................. 18

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,*
   178 F.3d 943 (7th Cir. 1999) ................................................................................... 24

*Doe v. Ashcroft,*
   317 F. Supp. 2d 488 (S.D.N.Y. 2004) ..................................................................... 20

*EEOC v. Nat'l Children's Ctr., Inc.,*
   146 F.3d 1042 (D.C. Cir. 1998) ....................................................................... *passim*

*FTC v. Standard Fin. Mgmt. Corp.,*
   830 F.2d 404 (1st Cir. 1987) .................................................................................... 14

*Gambale v. Deutsche Bank AG,*
   377 F.3d 133 (2d Cir. 2004) .................................................................................... 24

*Globe Newspaper Co. v. Superior Court,*
   457 U.S. 596 (1982) .......................................................................................... 19, 22

*In re Appl. for Pen Register & Trap/Trace Device with Cell Site*
   *Location Auth.*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) ........................................... 22

*In re Appl. of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.,*
   585 F. Supp. 2d 83 (D.D.C. 2008) ........................................................ 16, 20, 21, 22

*In re Appl. of U.S. for an Order Pursuant to 18 U.S.C. § 2705(b),*
   866 F. Supp. 2d 1172 (C.D. Cal. 2011) .................................................................. 21

*In re Appl. of WP Co. LLC,*
   No. 16-MC-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) .................... 20, 23

*In re Cendant Corp.,*
   260 F.3d 183 (3d Cir. 2001) .................................................................................... 14

*In re Chodiev,*
   No. 18-mc-13-EGS-RMM, 2021 WL 1795423 (D.D.C. Mar. 23, 2021) .............. 9, 10

*In re Fort Totten Metrorail Cases,*
   960 F. Supp. 2d 2 (D.D.C. 2013) ............................................................................ 11

*In re Guantanamo Bay Detainee Continued Access to Couns.*,
  968 F. Supp. 2d 222 (D.D.C. 2013) ........................................................................ 11

*In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*,
  300 F. Supp. 3d 61 (D.D.C. 2018) ............................................... 15, 17, 18, 20

*In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*,
  964 F.3d 1121 (D.C. Cir. 2020) ..................................................................... *passim*

*In re Leopold*,
  No. 13-mc-00712, 2020 WL 7481037 (D.D.C. Dec. 17, 2020) ................................. 17

*In re Motion for Release of Ct. Recs.*,
  526 F. Supp. 2d 484 (FISA Ct. Dec. 11, 2007) ......................................................... 24

*In re N.Y. Times Co.*,
  No. 21-cv-0091-JEB, 2021 WL 5769444 (D.D.C. Dec. 6, 2021) ...................... 13, 19

*In re Nat'l Broad. Co.*,
  653 F.2d 609 (D.C. Cir. 1981) .............................................................................. 6

*In re Sealed Case*,
  931 F.3d 92 (D.C. Cir. 2019) ................................................................................ 12

*In re Sealed Case*,
  971 F.3d 324 (D.C. Cir. 2020) ............................................................................. 12

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
  562 F. Supp. 2d 876 (S.D. Tex. 2008) ..................................................................... 20

*In re USA for 2703(d) Order for Three Email Accts. Serviced by [Redacted]
  for Investigation of Violation of 18 U.S.C. §§ 641 & 793*,
  548 F. Supp. 3d 31 (D.D.C. 2021) ......................................................................... 15

*League of Women Voters of U.S. v. Newby*,
  963 F.3d 130 (D.C. Cir. 2020) ............................................................................. 5, 8

*MetLife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ................................................................... 6, 14, 16

*Miller v. Indiana Hosp.*,
  16 F.3d 549 (3d Cir. 1994) ..................................................................................... 14

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................ *passim*

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) ............................................................................. 10, 11

*Patel v. Liu*,
  No. 23-cv-2699-APM (D.D.C. Sept. 14, 2023) ...................................................... 3

*Press-Enter. Co. v. Superior Court*,
  478 U.S. 1 (1986) ................................................................................... 8, 19, 21

iii

*Public Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988) ................................................................. 11

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ................................................................... 12, 22

*S.E.C. v. Am. Int'l Grp.*,
    712 F.3d 1 (D.C. Cir. 2013) ...................................................................... 5

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
    187 F.3d 1096 (9th Cir. 1999) ............................................................. 11

*Stern v. Trs. of Columbia Univ.*,
    131 F.3d 305 (2d Cir. 1997) ................................................................ 24

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 178 (4th Cir. 1988) ............................................................... 23

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) .......................................................... 11

*United States v. Brice*,
    649 F.3d 793 (D.C. Cir. 2011) ............................................................. 19

*United States v. El-Sayegh*,
    131 F.3d 158 (D.C. Cir. 1997) ......................................................... 5, 13

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980) ...................................................... *passim*

*United States v. ISS Marine Servs., Inc.*,
    905 F. Supp. 2d 121 (D.D.C. 2012) ..................................................... 13

*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ............................................................. 12

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
    89 F.3d 897 (D.C. Cir. 1996) ............................................................... 12

*Washington Post v. Robinson*,
    935 F.2d 282 (D.C. Cir. 1991) .............................................. 19, 22, 24

**Statutes**

15 U.S.C. § 57b-2a .................................................................................. 20

18 U.S.C. § 2518 ..................................................................................... 21

18 U.S.C. § 2703 ....................................................................... 2, 13, 20

18 U.S.C. § 2705 ......................................................................... 2, 4, 20

18 U.S.C. § 2709 ..................................................................................... 20

**Rule**

Fed. R. Civ. P. 24 ................................................................................. 5, 8, 11

**Other Authorities**

Editorial, *When the Justice Department Spied on Congress*,
    Wall Street J. (Oct. 26, 2023).................................................................. 15

*Empower Oversight Obtains Copies of Google Gag Orders,*
    *Presses Justice Department to Justify Hiding its Collection of*
    *Congressional Staff Communications Records from the Public*,
    Empower Oversight Whistleblowers & Rsch. (Dec. 4, 2023)................................... 4

Adam Goldman et al.,
    *Ex-Senate Aide Charged in Leak Case Where Times Reporter's*
    *Records Were Seized*, N.Y. Times (June 7, 2018) ...................................... 4

Catherine Herridge,
    *Rosenstein threatened to 'subpoena' GOP-led committee in 'chilling'*
    *clash over records, emails show*, Fox News (June 12, 2018).................................... 3

Off. of Inspector Gen., U.S. Dep't of Just.,
    *Ongoing Work, Review of the Department of Justice's*
    *Use of Subpoenas and Other Legal Authorities to Obtain*
    *Communication Records of Members of Congress and*
    *Affiliated Persons, and the News Media,*.................................................. 4

Myah Ward,
    *Adam Schiff calls for investigation after report of his phone records*
    *being seized by Trump DOJ*, Politico (June 10, 2021) ............................................. 3

This motion relates to a matter of significant public interest. Presently, there are multiple layers of secrecy standing between the public and important documents that the Department of Justice ("DOJ") filed in this case. After obtaining a subpoena, DOJ requested and received non-disclosure orders ("NDOs") that prohibited Google, Inc. from notifying "any other person of the existence of" the subpoena. *See* Ex. A. DOJ filed those requests in a sealed case. And those requests themselves are also under seal. Accordingly, the public is deprived of learning what basis (if any) DOJ offered in support of its NDO requests. Considering the default in this Circuit that court documents are to be publicly available, Empower Oversight Whistleblowers & Research ("Empower Oversight") seeks to intervene and requests the unsealing of the motions for NDOs that DOJ filed regarding subpoena number GJ2017091241939.

## BACKGROUND

Jason Foster is the Founder of Empower Oversight. On October 19, 2023, he received notice that DOJ had obtained and served a subpoena on Google in 2017 for records associated with his Google email address and two Google Voice telephone numbers connected to his family's telephones and his official work phone at the United States Senate. *See* Ex. B (Grand Jury Subpoena).[1] At that time, in 2017, Mr. Foster was Chief Investigative Counsel to the U.S. Senate Judiciary Committee. He was responsible for directing congressional oversight investigations into waste, fraud, abuse, and misconduct at DOJ, and he worked under the direction of the Committee's

---

[1] In the version of the subpoena attached at Exhibit B, Empower Oversight has redacted all phone numbers and email addresses for privacy. However, Empower Oversight is prepared to provide an unredacted version of the subpoena to the Court or DOJ upon request.

Chairman, Chuck Grassley of Iowa, pursuant to his constitutional authorities as delegated by the Senate to the committee and its chair.

As the subpoena and NDOs show, the subpoena was issued by the U.S. District Court for the District of Columbia on September 12, 2017, pursuant to the Stored Communications Act, 18 U.S.C. §§ 2703(d) and 2705, which compelled Google to release records related to Mr. Foster's Google accounts, as well as the records of other Google customers. Based on further discussions with the U.S. Senate Office of Legal Counsel, DOJ's Office of Inspector General, former colleagues of Mr. Foster's who also received notices, and attorneys for Google, it appears that the other accounts listed in the subpoena belonged to other staffers, both Republicans and Democrats, for U.S. House and Senate committees that were similarly engaged in oversight of DOJ pursuant to their constitutional authorities. However, DOJ withheld that important context from Google, which raises the question of whether it also withheld that information from the Court.

For each of the listed accounts, the subpoena required Google to release customer or subscriber information, as well as subscribers' names, addresses, local and long-distance telephone connection records, text message logs, records of session times and durations, length of service, and types of service utilized for the period from December 1, 2016, to May 1, 2017 ("communications records"). *See* Ex. B at 2.

The subpoena therefore compelled the release of extensive information about the communications of the account holders, including Mr. Foster. It compelled the release of detailed logs indicating with whom, precisely when, how often, and for how

long those users were communicating.  This sort of detail could easily enable DOJ to identify confidential whistleblowers who were providing Congress with information about government misconduct.  The Executive Branch's collection of these communications records exposes other potentially privileged Legislative Branch information and generally raises a host of important constitutional, separation-of-powers issues with no notice or opportunity to be heard by the Legislative Branch.

Other former congressional staffers have publicly stated that they received similar notices, including former U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI") staffer Kashyap Patel.[2]  Notably, around that same time, Deputy Attorney General Rosenstein had threatened to subpoena HPSCI staffers' personal records during a confrontation over DOJ's refusal to comply with that committee's compulsory process.[3]  But DOJ's targets were not limited to Republican staff.  Democrats in Congress have called for investigations into the targeting of their communications as well, which reportedly included subpoenas to Apple for information about HPSCI aides and their families, including one account belonging to a child.[4]  According to its website, DOJ's Inspector General's Office is

---

[2] After receiving a similar notice from Google, Mr. Patel filed a civil action against current and former federal officials.  *See Patel v. Liu*, No. 23-cv-2699-APM (D.D.C. Sept. 14, 2023).  The subpoena for Mr. Patel's records was issued by the U.S. District Court for the District of Columbia on November 20, 2017, about two months after the subpoena for Mr. Foster's records.  *See id.,* ECF No. 1-2.

[3] Catherine Herridge, *Rosenstein threatened to 'subpoena' GOP-led committee in 'chilling' clash over records, emails show*, Fox News (June 12, 2018), https://tinyurl.com/3k7ax3vd.

[4] Myah Ward, *Adam Schiff calls for investigation after report of his phone records being seized by Trump DOJ*, Politico (June 10, 2021), http://tinyurl.com/dhdpa8me.

currently "reviewing the DOJ's use of subpoenas and other legal authorities to obtain communication records of Members of Congress and affiliated persons, and the news media in connection with recent investigations of alleged unauthorized disclosures of information to the media[.]"[5]

There are ample reasons to doubt that DOJ had a legitimate predicate to exclusively target these Legislative Branch oversight attorneys' communications without also subjecting its own attorneys and senior Executive Branch officials who accessed the same restricted information to the same zealous scrutiny. Those doubts are only reinforced by DOJ's unusual demands for secrecy over many years. It sought and received NDOs under 18 U.S.C. § 2705, barring Google and other telecommunications companies from informing Congress, or anyone else, that it collected the communications records of Members of Congress and their staff, even *after* the investigation that they were supposedly in furtherance of had ended.

DOJ's investigation led to the prosecution and guilty plea of Former Senate Intelligence Committee Security Director James Wolfe in 2018.[6] But even *after* Wolfe's conviction, DOJ requested *three* additional one-year renewals of the NDOs.

---

[5] Off. of Inspector Gen., U.S. Dep't of Just., *Ongoing Work*, *Review of the Department of Justice's Use of Subpoenas and Other Legal Authorities to Obtain Communication Records of Members of Congress and Affiliated Persons, and the News Media,* http://tinyurl.com/3x4jp8s4 (last visited Mar. 3, 2024).

[6] *Empower Oversight Obtains Copies of Google Gag Orders, Presses Justice Department to Justify Hiding its Collection of Congressional Staff Communications Records from the Public*, Empower Oversight Whistleblowers & Rsch. (Dec. 4, 2023), http://tinyurl.com/57h5d3m4; *see also* Adam Goldman et al., *Ex-Senate Aide Charged in Leak Case Where Times Reporter's Records Were Seized*, N.Y. Times (June 7, 2018), http://tinyurl.com/yfac9pxs.

*See* Ex. A at 3–8.  It was not until 2023 that DOJ finally relented and allowed the NDOs to expire.  And it was only then that Google could inform Mr. Foster and his former colleagues on Capitol Hill that DOJ had collected extensive, detailed records of their communications six years earlier.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24(b)(1)(B) governs permissive intervention and states that a court "may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact."  And "'every circuit court that has considered the question'—including this one—'has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.'"  *League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998)).

Once a party has been granted permissive intervention, "the intervenor may assert the common-law right of public access 'to records of [the] judicial proceeding.'"  *Id.* (quoting *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980)).  And "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'"  *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)).

Finally, when the common-law right of access to judicial proceedings attaches to judicial records, the burden of proof shifts to the party seeking to maintain closure.  *See In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) ("*Leopold II*").  And, under the D.C. Circuit's *Hubbard* test, a

"seal may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017) (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

## ARGUMENT

This motion presents a narrow question—whether the public should see the explanations DOJ provided when it asked the Court to prohibit Google from informing anyone, including Congressional leadership, Mr. Foster, or the other congressional staff targeted, about the underlying subpoena for more than six years after Google had already complied. This narrow question is of immense public importance. Indeed, there is no dispute that Mr. Foster was among a large bipartisan group of congressional staff who were each helping direct and fulfill Congress's important constitutional oversight function of DOJ.

At the time DOJ began collecting their communications records, Mr. Foster and his colleagues on both sides of the aisle were communicating with confidential sources and whistleblowers whose willingness to share information with Congress is essential to its oversight function. The Legislative Branch has a constitutional interest in protecting the identity of those confidential sources and whistleblowers, just as journalists do under the First Amendment. Yet, due to the secrecy demanded by DOJ, and granted *ex parte* by the Court, the NDOs deprived Congress of an opportunity to object at the time or even to know until years later that

6

telecommunications providers had complied with the subpoenas. Providers like Google, and perhaps even the Court, yielded to DOJ demands for secrecy without being given the full context and constitutional implications of the subpoenas.

This presents grave separation-of-powers and whistleblower-protection issues. The normal presumption of good faith on the part of the government was seriously undermined by the Deputy Attorney General's reported threats at the time—when he was frustrated and refusing to comply with Congressional subpoenas—to retaliate in just this way by subpoenaing congressional communications records. Only through public scrutiny of the DOJ's currently sealed filings can it become clear whether DOJ properly alerted the Court to the crucial context it clearly hid from Google and from Congress for all these years. The subpoena implicated weighty constitutional issues by targeting the communications records of a broad group of congressional oversight staff, and yet the Legislative Branch appears to have had no opportunity to challenge the intrusion or even receive notice that DOJ had followed through on the Deputy Attorney General's threats.

Fortunately, this Court has the authority to unseal the requests DOJ filed. Because the records are clearly judicial records, Empower Oversight has a presumptive right of access. *See Leopold II*, 964 F.3d at 1128 (holding that court orders, applications for nondisclosure orders and supporting materials, as well as court dockets are judicial records).

And, as demonstrated below, DOJ cannot show that a denial of access is warranted. *See id.* at 1129 (explaining that once the common law right of access

attaches, the opposing party has the burden of showing that secrecy should be maintained). The investigation in this case is long closed, and DOJ cannot claim that disclosure would impede an ongoing investigation or would reveal any information impinging on personal privacy. *See id.* at 1131–35 (affirming district court's finding that five of six *Hubbard* factors supported disclosure because investigation was complete but rejecting district court's use of administrative burdens as an independent factor preventing disclosure). Further, even if the common law right of access did not support unsealing, the First Amendment right of access to judicial records supports unsealing here. *See Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9, 11 (1986). Thus, intervention should be granted, and the underlying records should be unsealed.

## I.    Empower Oversight Should Be Allowed to Intervene for the Purpose of Asserting the Public's Right of Access.

Under Federal Rule of Civil Procedure 24(b)(1)(B), the Court "may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." The D.C. Circuit has held that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *Nat'l Children's Ctr.,* 146 F.3d at 1046; *see also League of Women Voters*, 963 F.3d at 136–37 (overruling the district court's denial of permissive intervention and holding that "[an intervenor] may intervene for the limited purpose of seeking to unseal"). To qualify for permissive intervention traditionally, "the putative intervenor must ordinarily present: (1) an independent ground for subject

matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Nat'l Children's Ctr.*, 146 F.3d at 1046.

But in the context of permissive interventions to enforce the common law right of public access, the D.C. Circuit has adopted a "flexible approach." *Id.* at 1046; *see also Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 50 (D.D.C. 2021) ("[T]he D.C. Circuit has eschewed strict readings of the phrase claim or defense and embraced a flexible reading of Rule 24(b) when the proposed third-party intervention does not fit the mold of a non-litigant seeking to stake a claim in an ongoing civil action.") (cleaned up); *In re Chodiev*, No. 18-mc-13-EGS-RMM, 2021 WL 1795423, at *2 (D.D.C. Mar. 23, 2021) ("A motion to intervene to access sealed documents may be timely even after the underlying litigation has ended. Courts also liberally construe the third element[.]"), *report and recommendation adopted*, No. 18-mc-13-EGS, 2021 WL 6805642 (D.D.C. May 7, 2021).  Empower Oversight meets the requirements under this "flexible approach[.]" *Nat'l Children's Ctr.,* 146 F.3d at 1046.

*First*, for this limited-purpose intervention, "[a]n independent jurisdictional basis is simply unnecessary," "because [Empower Oversight] does not ask the court to rule on the merits of a claim or defense."  *Id.* at 1047.  Rather, Empower Oversight only "challenge[s] the entry of an order of confidentiality," so "the general requirement of an independent jurisdictional basis would not prevent the district court from granting [its] motion to intervene."  *Id.*

*Second*, Empower Oversight's motion is timely because the D.C. Circuit follows the "'growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place *long after a case has been terminated.*'" *Id.* (emphasis added) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994)). In this case, the motion to intervene comes shortly after years of the government secretly and repeatedly delaying notification, through the very gag orders at issue here, to Mr. Foster and his fellow congressional staff about the fact that DOJ had been collecting detailed communications records about them and their families.

Moreover, because Empower Oversight does not seek to contest the merits of the litigation, its intervention will not impede the government's ability to litigate the merits of the underlying dispute.[7] For this reason, courts routinely allow intervention for unsealing purposes even after lengthy delays. *See Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19 (D.D.C. 2010) (holding that intervention was timely "more than one year after the routine briefing was completed on the motions for summary judgment, and some six months after the last hearing" in the case (citing *Nat'l Children's Ctr.*, 146 F.3d at 1047)); *see also Chodiev*, 2021 WL 1795423, at *2 ("A motion to intervene to access sealed documents may be timely even after the underlying litigation has ended."); *Vanda Pharms.*, 539 F. Supp. 3d at 50–51 ("But as noted above, that 'threshold' [of timeliness] is low—to the extent it exists

---

[7] Because this case docket remains entirely under seal, Empower Oversight is unable to discern what, if any, issues remain subject to litigation in this case.

at all—when a third party only seeks to intervene for the narrow purpose of unsealing judicial records."); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100–01 (9th Cir. 1999); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988).

*Third*, Empower Oversight meets the requirement to assert a claim or defense that shares a common question of law or fact with the underlying action because this requirement is also flexibly applied "when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order." *Nat'l Children's Ctr.*, 146 F.3d at 1047. Thus, courts have recognized that "the issue of the scope or need for the confidentiality order itself presents a common question that links the movant's challenge with the main action." *Id.*; *accord Pansy*, 23 F.3d at 777–78 (collecting cases); *Aristotle Int'l, Inc.*, 714 F. Supp. 2d at 19. And it is sufficient that a plaintiff "asserts the public's 'common law right of access to judicial records[.]'" *Vanda Pharms.*, 539 F. Supp. 3d at 51 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)); *accord Aristotle Int'l,* 714 F. Supp. 2d at 19 (noting that "the only common question is whether certain materials are properly sealed").

Thus, Empower Oversight should be allowed to intervene for the limited purpose of asserting the public's right to access these documents. *See, e.g.*, *In re Guantanamo Bay Detainee Continued Access to Couns.*, 968 F. Supp. 2d 222, 224 (D.D.C. 2013) (granting reporter's motion to intervene for the purpose of asserting the public's right to access a sealed declaration); *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 n.3 (D.D.C. 2013) ("The parties do not seriously dispute that the

11

Post, as a nonparty newspaper, may 'permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.'" (quoting *Nat'l Children's Ctr.*, 146 F.3d at 1046)).

## II.    The Documents in This Case Should be Unsealed.

After Empower Oversight is permitted to intervene, the Court should grant its request to unseal the motions DOJ filed in support of its requests for NDOs regarding the subpoena targeting the records of Mr. Foster and other congressional staff.

In this Circuit, **"**[t]he presumption of openness in judicial proceedings is a bedrock principle of our judicial system." *In re Sealed Case*, 971 F.3d 324, 325 (D.C. Cir. 2020). Because this presumption "stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings[,]" that presumption is "customary and constitutionally-embedded[.]" *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996) (first quote) and *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (second quote)); *accord Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) ("What this means in the context of trials is that the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted."); *Nixon*, 435 U.S. at 597–98 ("The interest necessary to support the issuance of a writ compelling [public] access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies[.]").

### A.    The Sealed Records Are Judicial Records.

As a threshold matter, the records in question must be judicial records for the common-law or First Amendment right of access to apply.  *See El-Sayegh*, 131 F.3d at 162–63.  The D.C. Circuit has expressly held that Stored Communications Act ("SCA") subpoenas and applications for orders qualify as judicial records.  *See Leopold II*, 964 F.3d at 1128.  In that case, the sealed materials included "SCA warrants [and] SCA § 2703(d) orders ... as well as applications for such orders, their supporting documents, and associated court dockets."  *Id.*  The D.C. Circuit then held that court orders, "[a]pplications for electronic surveillance orders and their supporting documents," and associated court dockets are judicial records.  *Id.* at 1128–29.  Accordingly, the records Empower Oversight seeks to unseal are indisputably judicial records.

### B.    The *Hubbard* Factors Weigh in Favor of Disclosure.

At this point, the burden shifts to the Government to show that competing interests justify maintaining the seal.  *See Leopold II*, 964 F.3d at 1129; *accord In re N.Y. Times Co.*, No. 21-cv-0091-JEB, 2021 WL 5769444, at *4 (D.D.C. Dec. 6, 2021) ("The conclusion that the Application is a judicial record creates a presumption in favor of its disclosure."); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140–41 (D.D.C. 2012) ("It is not the [party seeking unsealing's] burden to proffer a need for public access; the burden is instead the respondent's to demonstrate the *absence* of a need for public access because the law presumes that the public is entitled to access the contents of judicial proceedings.").

13

In this Circuit, courts apply the six *Hubbard* factors to assess the Government's claim that records should remain out of public view:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife*, 865 F.3d at 665 (citing *Hubbard*, 650 F.2d at 317–22). And the party seeking sealing "'bears the burden of showing that the material is the kind of information that courts will protect'" and that "'disclosure will work a *clearly defined and serious injury*[.]'" *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (emphasis added) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). In this case, the balancing of interests unequivocally supports disclosure.

1. The American people have a strong and legitimate interest in learning about DOJ's collection of communications records belonging to attorneys for elected representatives in Congress who, pursuant to their authority under the constitution, were performing oversight of the Department. The American people have an equally compelling interest in learning about DOJ's demands to keep it all secret for half a decade. *See Nixon*, 435 U.S. at 597–98 ("The interest necessary to support the issuance of a writ compelling [public] access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies[.]"); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a

party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").[8]  And the potential abuse of power by DOJ is clearly a matter of public concern and interest.  *See, e.g.*, Editorial, *When the Justice Department Spied on Congress*, Wall Street J. (Oct. 26, 2023),  http://tinyurl.com/3bun3ft3.

Indeed, in this case, DOJ's use of subpoenas to collect the communications records of its overseers raises serious public interest questions about the legitimacy of secretly intruding into both the personal and official activities of attorneys advising congressional committees overseeing of the Department.  It implicates serious issues of public interest including separation of powers, Legislative Branch privilege, and the protection of the identity of confidential whistleblowers whose assistance to the American people's elected representatives is essential to the constitutional oversight of the Executive Branch.

Moreover, the decision to seek renewal of the NDOs raises serious questions about how DOJ explained that additional NDOs were needed after the underlying investigation had concluded.  Without such information, it appears that DOJ was

---

[8] *See also In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*, 300 F. Supp. 3d 61, 93–94 (D.D.C. 2018) ("*Leopold I*") ("The USAO concedes 'that transparency is important,' and objects only to additional retrospective disclosure given the 'disclosures that have been made to date,' not to additional prospective disclosure."), *rev'd and remanded,* 964 F.3d 1121 (D.C. Cir. 2020); *In re USA for 2703(d) Order for Three Email Accts. Serviced by [Redacted] for Investigation of Violation of 18 U.S.C. §§ 641 & 793*, 548 F. Supp. 3d 31, 33 (D.D.C. 2021) ("To the contrary, *Leopold* takes for granted that when a matter is 'truly closed,' the government *will* assist in unsealing it while considering the *Hubbard* factors." (quoting *Leopold II*, 964 F.3d at 1133)).

likely seeking to conceal its overly broad dragnet approach to the communications records of Congressional Members and staff due to potential public controversy.

Further, the public has a "strong interest in reviewing documents 'specifically referred to in the trial judge's public decision[.]'" *Vanda Pharms.*, 539 F. Supp. 3d at 52 (quoting *Hubbard*, 650 F.2d at 318). This Court's previous subpoena orders are now in the public domain, such that "the public also has a transparency interest in knowing what record evidence the Court saw fit to exclude [as well as include] from its explanation of the reasons underlying its ultimate decision." *Id.* at 53 (citing *Metlife*, 865 F.3d at 668).

2. As for the second factor, "[i]f members of the public already have had access to the Challenged Documents, there would presumably be less justification to keep them under seal." *Id.* at 54. As noted above, several of the subpoenas here have already been released to the public. Thus, this factor weighs in favor of unsealing the materials. *See In re Appl. of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (holding that when "critical information is already in the public forum ... this factor weighs in favor of unsealing the ... materials").

3. Turning to the third factor, DOJ has not yet taken a position on unsealing. To the extent DOJ ultimately opposes unsealing, "this factor weighs somewhat against unsealing [but] it is not by itself dispositive." *Vanda Pharms.*, 539 F. Supp. 3d at 55 (citing *Nat'l Children's Ctr.*, 98 F.3d at 1410 (reversing district court's decision to seal consent decree when objection to unsealing was only factor weighing

in favor of maintaining seal)).  As Empower Oversight demonstrates here, this factor is substantially outweighed by each of the other *Hubbard* factors.

4.  There is also no reason to believe that appropriately redacted documents would jeopardize anyone's property or privacy interests.[9]  *See Leopold I*, 300 F. Supp. 3d at 95 (redacting personally identifying information ensures that "the requested docket information's disclosure is unlikely to impinge upon personal privacy concerns.").  And even in cases where such interests are jeopardized—they are not here—"this factor does not serve as a blanket excuse to keep the public from accessing *entire* judicial records[.]"  *Vanda Pharms.*, 539 F. Supp. 3d at 55 (emphasis added) (citing *Hubbard*, 620 F.2d at 324).

5.  The fifth factor is not implicated because the "investigation is complete and therefore is not in danger of being thwarted if the Court releases the documents."  *Appl. of N.Y. Times*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008).  This is made clear by DOJ having discontinued requesting NDOs related to this subpoena.  Thus, "[t]his factor too favors disclosure."  *Id.*

---

[9] Empower Oversight does not oppose appropriate redactions to protect the secrecy of grand jury proceedings or redactions of personally identifiable information when appropriate.  *See In re Leopold*, No. 13-mc-00712, 2020 WL 7481037, at *3 (D.D.C. Dec. 17, 2020) (instructing the government on remand from the D.C. Circuit to "to file redacted versions of any documents containing personally identifiable information filed on a given docket, and then to file a motion to unseal the case docket indicating the matter is closed and identifying, by filed document number, the unredacted versions of the government-redacted documents to remain under seal"); *Fort Totten*, 960 F. Supp. 2d at 11–12 (ordering the parties to redact minors' personal identifying information from settlement documents, so that the documents—to which the public had a right of access—could be filed on the public docket).

6.  Finally, the purpose for which the documents were introduced strongly supports unsealing.  This factor favors disclosure when "the parties explicitly intended the Court to rely on [the sealed] materials in adjudicating their dispute." *Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009). "And 'when a sealed document is considered as part of judicial decisionmaking, the sixth factor will oftentimes carry great weight.'" *Vanda Pharms.*, 539 F. Supp. 3d at 57 (internal alteration omitted) (quoting *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021)); *accord Hubbard*, 650 F.2d at 321 (calling the sixth factor the "single most important").

The documents in question were undoubtedly "part of judicial decision making" because the Court necessarily considered them when determining whether to issue NDOs.  *See Leopold I*, 300 F. Supp. 3d. at 96 ("PR/TT, § 2703(d), and SCA warrant materials, moreover, play a far more important role to judicial proceedings than did the documents at issue in *Hubbard*. Each PR/TT, § 2703(d), or SCA warrant application is generally treated as a separate judicial matter and initiates the assignment of a unique docket number.").  Thus, in the similar context here, "the sixth *Hubbard* factor weighs in disclosure's favor." *Id.* at 97.

*    *    *

Thus, the *Hubbard* factors strongly weigh in favor of disclosure, and no factor weighs strongly against disclosure.  The Court should therefore grant Empower Oversight's motion to unseal.

18

### C.    The First Amendment Right of Access Compels Disclosure.

Although the common law right of access is itself sufficient to grant the relief that Empower Oversight seeks, *see Leopold II*, 964 F.3d at 1126–27 (not reaching the First Amendment right of access because the common law right of access provided sufficient relief), the public's First Amendment right of access also applies to the documents at issue here and compels their disclosure.

Under the Supreme Court's prevailing "experience and logic" test, the public's qualified First Amendment right of access to judicial documents and proceedings attaches where: (a) the types of judicial processes or records sought have historically been available to the public, and (b) public access plays a "significant positive role" in the functioning of those proceedings. *Press-Enter.*, 478 U.S. at 9, 11; *see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605–07 (1982); *Washington Post v. Robinson*, 935 F.2d 282, 287–92 (D.C. Cir. 1991); *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (applying the experience and logic test). And, although "[t]he D.C. Circuit has not resolved the question of whether the First Amendment right of access applies to a § 2703(d) application," *N.Y. Times*, 2021 WL 5769444, at *8, both prongs support the public's First Amendment right of access to the documents at issue in this matter.

1. There is a long tradition of access to documents filed in connection with prior restraint proceedings or NDOs as well as subpoenas, even where the

19

information involves matters of national security.[10]  *See Doe v. Ashcroft*, 317 F. Supp. 2d 488, 491–93 (S.D.N.Y. 2004) (ordering the parties to provide timely public access to all non-sensitive information filed in connection with a lawsuit challenging indefinite gag orders issued pursuant to 18 U.S.C. § 2709(c)); *cf. In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 886 (S.D. Tex. 2008) ("The governmental interests considered here—the integrity of an ongoing criminal investigation, the reputational interests of targets, and the sensitivity of investigative techniques—are not sufficiently compelling to justify a permanent gag order."). Similarly, this Court has previously held that the First Amendment right of access applies to "warrant materials after an investigation has concluded," and that same logic extends to SCA applications for subpoenas under 18 U.S.C. § 2703. *Appl. of N.Y. Times*, 585 F. Supp. 2d at 88; *accord In re Appl. of WP Co. LLC*, No. 16-MC-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016).

Moreover, the authority on which DOJ relied for the NDOs—18 U.S.C. §§ 2703(d) & 2705(b)—does not provide for automatic sealing. This stands in stark contrast to the automatic sealing afforded applications for judicial orders in other contexts. *See* 15 U.S.C. § 57b-2a(e)(2) ("Upon application by the [Federal Trade] Commission, all judicial proceedings pursuant to this section [including proceedings under 18 U.S.C. § 2705(b)] shall be held in camera and the records thereof sealed until expiration of the period of delay or such other date as the presiding judge or

---

[10] This tradition was overlooked by the court in its analysis of the experience prong in *Leopold I*, 300 F. Supp. 3d at 91.

magistrate judge may permit."); 18 U.S.C. § 2518(8)(b) ("Applications made and orders granted under this chapter [of the Wiretap Act] shall be sealed by the judge."). Accordingly, the lack of any such automatic sealing here weighs strongly against sealing, as that was clearly not Congress's intent.

2.   The logic prong of the analysis focuses on whether access to the sealed documents would serve a "significant positive role in the functioning of the particular process in question." *Press-Enter.*, 478 U.S. at 8.  Transparency concerning judicial documents like the ones at issue ensures fairness, decreases bias, improves public perception of the justice system, and enhances the chances that the resulting orders will be well-justified and narrowly tailored. *See Nixon*, 435 U.S. at 598 (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies, and ... the operation of government"); *see also Appl. of N.Y. Times*, 585 F. Supp. 2d. at 89 ("[W]ith respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage.").

These interests are particularly acute where, as here, the government relies on a controversial statutory authority affecting the First Amendment rights of private individuals and where at least one court has openly questioned the applicability of that authority. *See In re Appl. of U.S. for an Order Pursuant to 18 U.S.C. § 2705(b)*, 866 F. Supp. 2d 1172, 1173 (C.D. Cal. 2011) (holding that 18 U.S.C. § 2705(b) does not authorize the government to obtain an order prohibiting disclosure of requests for "subscriber information"); *see also In re Appl. for Pen Register & Trap/Trace Device*

*with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 748–49 (S.D. Tex. 2005) (refusing to seal an opinion and denying the government's application for prospective cell site information, "because it concerns a matter of statutory interpretation which does not hinge on the particulars of the underlying investigation," and because the issue explored in the opinion had "serious implications for the balance between privacy and law enforcement, and is a matter of first impression in this circuit as well as most others").

Where the First Amendment right of access attaches to judicial documents, strict scrutiny applies to any restriction of that right. *See Globe Newspaper*, 457 U.S. at 606–07 & n.17; *accord Richmond Newspapers*, 448 U.S. at 581; *Appl. of N.Y. Times*, 585 F. Supp. 2d. at 91 ("Under the First Amendment qualified right of access test, the government must demonstrate that total restriction of the right of access is narrowly tailored to accomplish its compelling interests."). To overcome such scrutiny, the party seeking to restrict access (here, DOJ) must identify "compelling reasons," and the Court "must articulate specific findings on the record demonstrating that the decision to seal ... is narrowly tailored and essential to preserve [that] compelling government interest." *Robinson*, 935 F.2d at 289 & n.10; *see also Press-Enter.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion.").

Protecting the secrecy of a *concluded* criminal investigation cannot qualify as a compelling governmental interest, *see Appl. of N.Y. Times*, 585 F. Supp. 2d. at 90–92, and the blanket sealing of all judicial documents remotely related to an

investigation is not narrowly tailored to serve that interest, for at least two reasons. First, the Court must make individualized sealing determinations with respect to "each document" sought to be sealed. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (noting that because different levels of protection attach to different judicial records, courts "must determine the source of the right of access with respect to each document sealed"). Second, a document may not be sealed in its entirety if it is possible to accommodate the government's interests through some "less drastic alternatives to sealing," such as redaction of specific information. *Id.*; *accord Appl. of N.Y. Times*, 585 F. Supp. 2d. at 91 (holding that "the goal of protecting the confidentiality of informants can be accomplished by means less restrictive than prohibiting access to the warrant materials altogether"); *Appl. of WP Co.*, 2016 WL 1604976, at *2 ("While these interest[s] do not militate in favor of full secrecy, these interests may be protected through less restrictive means (*i.e.*, redacting this information prior to unsealing the relevant materials).").

This Court should thus require the government to explain why the NDO requests must be sealed in their entirety, allow Empower Oversight an opportunity to respond, and then make the individualized determination required by the First Amendment right of access.

### D.    The Court May Also Unseal Pursuant to its Discretionary Disclosure Authority.

Even if the Court determines that the public does not have a First Amendment or common law right to access, its supervisory power over its own records permits it to unseal the documents here at issue. *See In re Motion for Release of Ct. Recs.*, 526

F. Supp. 2d 484, 486–87 (FISA Ct. Dec. 11, 2007) (quoting *Nixon*, 435 U.S. at 598); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140–41 (2d Cir. 2004) (same).

In fact, regardless of whether the Court grants Empower Oversight's motion to intervene, it has an independent *duty* to evaluate the public's right of access to these proceedings. *See, e.g.*, *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)."); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 307 (2d Cir. 1997) (holding, sua sponte, that the district court must review records filed wholesale under seal to determine whether their confidential treatment was warranted, without considering whether there was a person or entity that had a specific interest in gaining access to them or making them public); *cf. Robinson*, 935 F.2d at 289 (holding that a court "must articulate specific findings on the record demonstrating that the decision to seal the plea agreement is narrowly tailored and essential to preserve a compelling government interest"). Accordingly, even if the Court denies Empower Oversight's intervention request, the Court should nonetheless unseal the identified records.

## CONCLUSION

As demonstrated above, Empower Oversight satisfies the requirements for permissive intervention. And allowing intervention will not harm any ongoing proceedings. Additionally, Empower Oversight has shown that there is no legitimate basis for maintaining DOJ's motions for NDOs under seal. Rather, this is only serving to deprive the public of important information about how DOJ supposedly

justified keeping its attempts to investigate its overseers hidden from: (1) Google, as the subpoena recipient; (2) Mr. Foster and his fellow oversight staff whose communications records were collected; and (3) Congress, whose constitutional interests and prerogatives were also at stake.  Of course, avoiding public scrutiny, embarrassment, or controversy are not reasons to seal records.

Accordingly, the Court should allow Empower Oversight to intervene, and the Court should unseal the motions DOJ filed requesting NDOs related to the subpoena for Mr. Foster's Google account information.

May 2, 2024                                   Respectfully submitted,

                                              */s/ Brian J. Field*
                                              BRIAN J. FIELD
                                              D.C. Bar No. 985577
                                              SCHAERR | JAFFE LLP
                                              1717 K Street NW
                                              Suite 900
                                              Washington, DC 20006
                                              Tel.: (202) 787-1060
                                              Email: bfield@schaerr-jaffe.com

                                              *Counsel for Empower Oversight*
                                              *Whistleblowers & Research*

25