## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | Case No.: 24-mc-0058 (JEB) |

## REPLY IN SUPPORT OF EMPOWER OVERSIGHT'S
## MOTION TO INTERVENE AND FOR UNSEALING



**RECEIVED**

JUL 15 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................... 2

   I.     Empower Oversight Demonstrated That it may Intervene. ....................... 3

   II.    The Court Should Unseal the Requested Records Under the
        Common Law Right of Access, the First Amendment Right of
        Access, or this Court's Discretionary Authority. .......................................... 6

        A.    The common law right of access favors disclosure. .......................... 7

        B.    Disclosure is also appropriate under the Court's inherent
              authority. ............................................................................................. 18

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Appl. of Newsday, Inc.*,
   895 F.2d 74 (2d Cir. 1990) .......................................................................... 13

*Baltimore Sun Co. v. Goetz*,
   886 F.2d 60 (4th Cir. 1989) ......................................................................... 12

*Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*,
   656 F.2d 856 (D.C. Cir. 1981) ............................................................... 16, 19

*Gannett Co., Inc. v. DePasquale*,
   443 U.S. 368 (1979) ..................................................................................... 14

*In re Appl. for Access to Certain Sealed Video Exs.*,
   546 F. Supp. 3d 1 (D.D.C. 2021) ................................................................... 5

*In re Cheney*,
   No. 23-5071, 2024 WL 1739096 (D.C. Cir. Apr. 23, 2024) ................... 16, 18

*In re Grand Jury Subpoena No. 7409*,
   No. 18-41 (BAH), 2019 WL 2169265 (D.D.C. Apr. 1, 2019) ...................... 16

*In re Grand Jury Subpoena, Judith Miller*,
   438 F.3d 1138 (D.C. Cir. 2006) ............................................................. 16, 17

*In re Grand Jury Subpoena, Judith Miller*,
   493 F.3d 152 (D.C. Cir. 2007) ..................................................................... 18

*In re Grand Jury Subpoena*,
   No. 18-3071 (D.C. Cir. Apr. 23, 2019) ....................................................... 16

*In re L.A. Times Commc'ns LLC*,
   628 F. Supp. 3d 55 (D.D.C. 2022) ................................................................. 5

*In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders,*
    964 F.3d 1121 (D.C. Cir. 2020) ...................................................................... *passim*

*In re Motions of Dow Jones & Co.,*
    142 F.3d 496 (D.C. Cir. 1998) ............................................................ 10, 13, 14, 15

*In re N.Y. Times Co.,*
    657 F. Supp. 3d 136 (D.D.C. 2023) ...................................................................... 18

*In re North,*
    16 F.3d 1234 (D.C. Cir. 1994) ............................................................................... 17

*In re Press Appl. for Access to Jud. Recs. Ancillary to Certain Grand Jury*
    *Proc. Concerning Former Vice President Pence,*
    678 F. Supp. 3d 135 (D.D.C. 2023) ................................................................. 15, 18

*In re Sealed Case No. 99-3091,*
    192 F.3d 995 (D.C. Cir. 1999) ............................................................................... 11

*In re Sealed Case,*
    199 F.3d 522 (D.C. Cir. 2000) ............................................................................... 10

*In re Search of Fair Fin.,*
    692 F.3d 424 (6th Cir. 2012) ................................................................................. 12

*In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D),*
    707 F.3d 283 (4th Cir. 2013) ................................................................................... 8

*Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior,*
    No. 20-cv-1918 (ABJ), 2020 WL 12655958 (D.D.C. Aug. 27, 2020) ......................... 4

*Matter of Appl. & Aff. for a Search Warrant,*
    923 F.2d 324 (4th Cir. 1991) ................................................................................. 12

*Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.,*
    607 F. Supp. 3d 11 (D.D.C. 2022) ........................................................................... 5

*Matter of the Appl. of WP Co. LLC,*
    No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ..................... 12, 18

*McKeever v. Barr,*
    920 F.3d 842 (D.C. Cir. 2019) ......................................................................... 15, 19

*Metlife, Inc. v. Fin. Stability Oversight Council,*
    865 F.3d 661 (D.C. Cir. 2017) ............................................................................... 13

*New Eng. Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.,*
    No. 16-cv-149 (KBJ), 2016 WL 10839560 (D.D.C. Apr. 29, 2016) ........................... 4

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 6
    28 F.2d 1368 (D.C. Cir. 1980) ............................................................................... 11

*Senate of P.R. v. U.S. Dep't of Just.,*
    823 F.2d 574 (D.C. Cir. 1987) ............................................................................... 16

*United States v. El-Sayegh,*
   131 F.3d 158 (D.C. Cir. 1997) ................................................................ 5

*United States v. Hubbard,*
   650 F.2d 293 (D.C. Cir. 1980) ......................................................... 5, 6, 8

*United States v. Index Newspapers LLC,*
   766 F.3d 1072 (9th Cir. 2014) ............................................................. 12

*United States v. Sealed Search Warrants,*
   868 F.3d 385 (5th Cir. 2017) ................................................................ 11

*United States v. Torrens,*
   560 F. Supp. 3d 283 (D.D.C. 2021) ....................................................... 5

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.,*
   395 F. Supp. 3d 1 (D.D.C. 2019) ........................................................... 4

## Statutes

18 U.S.C. § 2705 ........................................................................... 7, 9, 10

18 U.S.C. § 3123 ..................................................................................... 8

## Rules

Fed. R. Civ. P. 24 .................................................................................. 3

Fed. R. Crim. P. 6 .......................................................................... *passim*

LCrR 6.1 ......................................................................................... *passim*

LCrR 57.6 ........................................................................................... 3, 4

LCvR 7 .................................................................................................. 3

## Other Authorities

Just. Manual § 9.13.700.4 ..................................................................... 6

Off. of Inspector Gen., U.S. Dep't of Just., *Ongoing Work, Review of the Department
   of Justice's Use of Subpoenas and Other Legal Authorities to Obtain
   Communication Records of Members of Congress and Affiliated Persons,
   and the News Media* ......................................................................... 17

Press Release, U.S. Att'y's Off., D.C., *Former U.S. Senate Employee
   Indicted on False Statements Charges* (June 7, 2018) ........................... 17

Press Release, U.S. Att'y's Off., D.C., *Former U.S. Senate Employee
   Sentenced to Prison Term on False Statements Charge* (Dec. 20, 2018) ............... 17

Empower Oversight Whistleblowers & Research ("Empower Oversight") seeks to intervene in this matter to unseal the motions and supporting documents the Department of Justice ("DOJ") filed requesting certain non-disclosure orders ("NDOs"). Those records will reveal whether DOJ informed the Court about several important facts when requesting the NDOs: (1) that the related subpoenas sought the communications records of attorneys for Congressional committees conducting oversight of DOJ pursuant to their authorities under the U.S. Constitution and the rules of the House and Senate; and (2) that the underlying case was closed, or inactive pending closure, when DOJ sought several of the NDO renewals.

Rather than cooperate with Empower Oversight to find a way that these records may be released with appropriate redactions, DOJ's response to Empower Oversight's motion was to insist on continued (and permanent) secrecy—nearly seven years after the underlying events. The only conceivable purpose of this secrecy is to obscure key facts from Congress and the public, thereby undermining the typical presumption of good faith to which DOJ would otherwise be entitled. Indeed, DOJ's demand for total secrecy raises serious suspicions that DOJ opposed Empower Oversight's request merely to continue concealing its previous disregard for the separation of powers and for the whistleblower protection policy implications of its subpoenas and NDOs.

However, avoiding public controversy or hard questions from oversight authorities is not a legitimate reason to keep court filings secret. In fact, such an insistence on secrecy *increases* the legitimacy of Empower Oversight's request that

the Court unseal these records.  Moreover, DOJ's response confirms the public's keen interest—as evidenced by the related probes initiated by the DOJ Inspector General and Congress—in understanding what basis DOJ provided the Court when requesting continued NDOs in this matter for several years.

Accordingly, the Court should unseal the motions for NDOs, along with any supporting memoranda, that DOJ submitted related to subpoena number GJ2017091241939.

## ARGUMENT

The Court should grant Empower Oversight's motion for several reasons.  As to intervention, Empower Oversight demonstrated that it satisfies this Circuit's requirements, and DOJ's only response is a stilted complaint about where Empower Oversight listed the applicable authority supporting intervention.  By relying on such formalism, DOJ fails to argue that Empower Oversight does not satisfy the standards for intervention.

As to unsealing, Empower Oversight also demonstrated that unsealing is appropriate under the common law right of access, the Court's inherent authority, and the First Amendment.  DOJ's only response is to ask the Court to ignore these various authorities and conclude instead that the NDO motions and supporting filings are covered by Federal Rule of Criminal Procedure 6(e).  And, according to DOJ, that means the NDO requests must stay sealed in perpetuity.

Unsurprisingly, DOJ fails to identify any authority for such a striking position, which would permanently deprive the public of important information.  Fortunately,

the public is not left in the dark because there is a wealth of authority in this Circuit supporting unsealing, and the Court should reject DOJ's misreading of Rule 6(e).

## I.    Empower Oversight Demonstrated That It May Intervene.

Empower Oversight satisfies each requirement in this Circuit for intervention. *See* Mem. in Support of Mot. to Intervene & for Unsealing at 8–12 ("Mem."). DOJ's only response is the mistaken argument that Empower Oversight allegedly discussed the incorrect rule (Local Civil Rule 24(b)) in its memorandum in support of motion to intervene and unseal. *See* DOJ Opp'n to Mot. to Intervene & for Unsealing at 1–2 ("DOJ Opp'n"). As explained below, DOJ is mistaken about which rule this Court should apply here. Moreover, this half-hearted objection is misplaced because DOJ simultaneously acknowledges that Empower Oversight cited DOJ's preferred rule in its motion to intervene. *See id.* at 1 n.2. In other words, DOJ's argument boils down to a complaint about *where* Empower Oversight listed the applicable authority. DOJ's arguments should be rejected for at least two reasons.

First, DOJ fails to identify any authority supporting its proposed formalism. In its motion to intervene, Empower Oversight cited several rules that authorize its intervention. *See* Mot. to Intervene & for Unsealing at 1 ("Mot.") (citing Fed. R. Civ. P. 24(b); LCvR 7(j); LCrR 57.6). In its supporting memorandum of law, Empower Oversight then discussed Local Civil Rule 24(b) in detail. *See* Mem. at 5–6, 8–9. In DOJ's estimation, Empower Oversight should have spent more time discussing Local Criminal Rules 6.1 and 57.6, the latter of which, again, Empower Oversight also identified as a basis for intervening. *See* Mot. at 1 (citing LCrR 57.6). But DOJ offers

3

no authority for denying a motion to intervene where a particular rule authorizing relief is addressed only in the cover motion. Instead, this Court routinely rejects objections to intervention when they "elevate[] form over substance." *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*, No. 20-cv-1918 (ABJ), 2020 WL 12655958, at *3 (D.D.C. Aug. 27, 2020); *cf. New Eng. Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, No. 16-cv-149 (KBJ), 2016 WL 10839560, at *1 (D.D.C. Apr. 29, 2016) ("where the position of the movant is apparent ... and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements" (quotation marks and citation omitted)); *accord Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 22 n.4 (D.D.C. 2019).

Moreover, through this myopic focus on *where* the various rules were listed, DOJ fails to show that Empower Oversight does not satisfy either Local Criminal Rule 6.1 or 57.6. *See* DOJ Opp'n at 2 n.3. Rather, Empower Oversight fully complied with the requirements of Local Criminal Rule 57.6, including a "statement of [Empower Oversight's] interest in the matter," "a statement of facts, and a specific prayer for relief." LCrR 57.6. Thus, DOJ has no basis to claim that it has suffered any prejudice, and the Court should decline DOJ's invitation to elevate form over substance. *See Mandan*, 2020 WL 12655958, at *3.

Second, DOJ is also mistaken on the merits. Contrary to DOJ's claim (at 1–2) that courts only allow permissive intervention for the purpose of unsealing in the context of civil discovery materials, it was in a criminal case where the D.C. Circuit announced the authoritative formulation of the common law right of access. *See*

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) (permitting intervention for purpose of opposing unsealing and formulating the *Hubbard* factors).  And the D.C. Circuit has never accepted the line that DOJ seeks to draw between civil and criminal cases.  *See United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (accepting right of intervenor to intervene to assert common law right of access to a plea agreement but denying unsealing because plea agreement was not entered).

In fact, this Court routinely allows intervention to unseal materials in criminal trials.  *See, e.g.*, *Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11 (D.D.C. 2022) (permitting intervention and applying common law right of access to sealed *motion in limine* materials from a criminal trial); *In re Appl. for Access to Certain Sealed Video Exs.*, 546 F. Supp. 3d 1, 2–3 (D.D.C. 2021) (permitting media organizations to intervene under Court's standing order relating to January 6 trials to assert common law of access).  Moreover, DOJ's cited cases only support Empower Oversight's intervention here.  *See In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55 (D.D.C. 2022) (permitting intervention and applying *Hubbard* factors to search warrant); *United States v. Torrens*, 560 F. Supp. 3d 283 (D.D.C. 2021) (permitting intervention and applying *Hubbard* factors to video evidence after the entrance of a plea agreement).

Thus, the Court should allow Empower Oversight to intervene for the limited purpose of unsealing judicial records.

## II.    The Court Should Unseal the Requested Records Under the Common Law Right of Access, the First Amendment Right of Access, or this Court's Discretionary Authority.

The Court should also grant Empower Oversight's request to unseal the various NDO motions and supporting filings.   There is no dispute that these documents are judicial records.  *See* Mem. at 13; *see generally* DOJ Opp'n.  The only dispute is about which standard the Court should apply when determining whether to unseal the requests for NDOs—the common law right of access and *Hubbard* factors or Federal Rule of Criminal Procedure 6(e).  According to DOJ, Rule 6(e) applies because the NDO requests are "ancillary grand jury materials"—a phrase DOJ conspicuously avoids defining.  DOJ Opp'n at 4.  In fact, DOJ appears to believe that Rule 6(e) applies to require secrecy of these records in perpetuity.  *Id.* Unsurprisingly, DOJ fails to identify any support for such a startling proposition.[1]

Rather, binding authority confirms that the common law right of access applies.  And that standard requires this Court to apply the *Hubbard* factors, which weigh heavily in favor of unsealing.  Additionally, DOJ's passing references to the First Amendment right of access or this Court's discretionary authority fail to demonstrate why unsealing should be denied.

---

[1] DOJ's request for perpetual sealing stands in direct conflict with the rules governing NDOs, which themselves only apply for a single year.  *See* Ex. A, Mot. to Intervene and Unseal.  And it conflicts with DOJ policy, where the Justice Manual states that NDOs may only be sought for one year or less.  *See* Just. Manual § 9.13.700.4.  This limitation confirms that any secrecy related to NDOs must be of limited duration. That default principle should apply equally here.

**A.    The common law right of access favors disclosure.**

Contrary to DOJ's suggestion, the common law right of access applies to the Government's requests for NDOs, and the Court should reject DOJ's reliance on Rule 6(e).  As explained below, binding D.C. Circuit authority confirms that Rule 6(e) is inapplicable here, as NDO motions are not grand jury materials.

1.  There can be little doubt that the common law right of access applies to motions for NDOs.  Although DOJ puts great weight on the D.C. Circuit's decision in *In re Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020), that case explains why it is the common law right of access—not Rule 6(e)—that applies here.

As *Leopold* confirmed, once a record is found to be a "judicial record[]," the common law right of access applies *unless* "Congress has spoken directly to the issue at hand."  964 F.3d at 1129 (quotation marks omitted from second quote).  And the *Leopold* court explained how courts are to apply this standard.  For instance, *Leopold* explained that the Stored Communications Act ("SCA") authorizes courts to issue SCA warrants and § 2703(d) orders.  *Id.*  But, as the government acknowledged in that case, the SCA does not "'require the sealing of warrants or § 2703(d) orders and applications in support thereof.'"  *Id.* (quoting Government brief).  Rather, the SCA only *authorizes* the government to seek a "separate order prohibiting the service provider from notifying anyone about the electronic surveillance order, 'for such period as the court deems appropriate[.]'"  *Id.* (quoting 18 U.S.C. § 2705(b)).  Because

the SCA does not contain a "default sealing or nondisclosure provision[], ... the common-law rule applies."[2]  *Id.* (cleaned up).

Clarifying how courts should conduct their analysis, the *Leopold* court explained that the Pen Register Act provides that a pen register order "'shall direct that ... the order be sealed until otherwise ordered by the court.'"  *Id.* at 1130 (quoting 18 U.S.C. § 3123(d)(1)).  In that instance, where Congress "expressly direct[ed] sealing ..., Congress has displaced the usual presumption in favor of access."  *Id.*  But even then, *Leopold* explained, the *Hubbard* factors are *still* to be used to make the unsealing decision.  *Id.*

In both instances, *Leopold* confirms that the public's right of access is "fundamental."  *Id.*  In contrast, *Leopold* pointed to Rule 6(e) as a "useful comparison," noting that Rule 6(e) "expressly directs secrecy as the default position, [which] thus displaces the common-law right of access."  *Id.*  That is because Rule 6(e) lists several grand-jury-related records that "must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."  *Id.* (quoting Fed. R. Crim. P. 6(e)(6)).  Thus, Congress identified records that "must be kept under seal" and it identified a standard to be applied.  *Id.*  On those facts, Rule 6(e) establishes a different test.

---

[2] The only other Circuit to address this question agrees with the D.C. Circuit.  *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013) ("Because we conclude that § 2703(d) orders are "judicial records," the common law presumption of access attaches to these documents." (footnote omitted)).

But it does not follow that Rule 6(e) is relevant here, and DOJ misconstrues *Leopold's* careful analysis when mistakenly importing Rule 6(e)'s standards here. *See* DOJ Opp'n at 2–4.[3] Contrary to DOJ's understanding, *Leopold* did not find that SCA warrants and § 2703(d) orders issued pursuant to criminal investigations fell under the purview of Rule 6(e). 964 F.3d at 1129. Nor did *Leopold* hold that *everything* tangentially referencing a grand jury is swept up in Rule 6(e). Rather, the court explained that the common law right of access and the *Hubbard* factors are "fundamental," *Leopold,* 964 F.3d at 1130, and those were the rules that the *Leopold* court directed the district court to apply on remand to determine "how and when greater access can be provided," *id.* at 1135.

This Court should do likewise here. As the *Leopold* court acknowledged, the SCA permits the Government to "seek a separate order prohibiting the service provider from notifying anyone about the electronic service order, 'for such period as the court deems appropriate[.]'" 964 F.3d at 1129 (quoting 18 U.S.C. § 2705(b)). Because such orders here have expired, the case is closed, and Jason Foster was finally informed of the production of his communications records to the Executive Branch six years earlier, there no longer exists a need "to protect specified law

---

[3] DOJ claims (at 7–8) that *Leopold* held that there was no common right of access to NDOs filed pursuant to a grand jury proceeding. But the citation DOJ gives—964 F.3d at 1128 n.1—does not exist. If DOJ meant 964 F.3d at 1128 n.4, which only states that "[w]e do not consider other kinds of electronic surveillance orders or their related filings," that statement does not support DOJ's position that *Leopold* *forecloses* Empower Oversight's sought relief.

enforcement interests in connection with ongoing investigations." 964 F.3d at 1129 (citing 18 U.S.C. § 2705(b)).

DOJ responds that Rule 6(e) pre-empts the common law right of access, relying on inapplicable circuit precedent pertaining to grand jury materials. DOJ Opp'n at 3–4. In short, DOJ reasons that because the NDOs were issued to maintain the secrecy of a grand jury subpoena, Rule 6(e)'s rule of secrecy applies instead of the common law right of access. *Id.* And, based on its opposition, DOJ appears to believe that secrecy here should last in perpetuity.

But DOJ's argument for sealing in perpetuity relies on inapplicable Circuit precedent. *Id.* For instance, Empower Oversight does not seek the "mandatory public docketing of grand jury ancillary proceedings[.]" *In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000). Nor does Empower Oversight seek access to any "objections to the grand jury subpoena," "hearings" pertaining to such objections, or "access to any hearings, and transcripts of such hearings" for a motion to show cause. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998) (cleaned up) ("*Dow Jones*"). Unlike such documents that would reveal the core of the grand jury's deliberations and hence permit the "unauthorized disclosure of a matter occurring before a grand jury," Fed. R. Crim. P. 6(e)(6), the motions for NDOs here were simply directed at service providers to stop them for years, even after the underlying matter was closed, from notifying Jason Foster and other attorneys for congressional oversight committees of the disclosure of their communication records to the Executive Branch. *See* 18 U.S.C. § 2705(b). Thus, they are *separate* motions that do not reveal anything

10

about the deliberations of the grand jury.[4]  Accordingly, the Court should reject DOJ's

attempt to broaden Rule 6(e)'s mandate to cover the requested materials, because the

Rule does not mandate "that a veil of secrecy be drawn over all matters occurring in

the world that happen to be investigated by a grand jury."  *Sec. & Exch. Comm'n v.

Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980).

Indeed, DOJ does not even attempt to explain how requests for NDOs from a

*closed investigation* can implicate the interests protected by Rule 6(e), nor does it

dispute that it sought NDOs after the underlying matter was closed.  DOJ studiously

avoided acknowledging this issue for obvious reasons.  First, it is contrary to the SCA

and DOJ policy to seek renewals of NDOs in closed cases.  Second, multiple circuits

have held that the public has a common law right of access even to *sealed pre-

indictment* warrants.  *See United States v. Sealed Search Warrants*, 868 F.3d 385,

395 (5th Cir. 2017) (affirming case-by-case application of common law right of access

to pre-indictment warrant affidavits and remanding to the district court to make

specific findings balancing interests); *Matter of Appl. & Aff. for a Search Warrant*,

---

[4] DOJ's argument here relies on the incorrect view that all things remotely related to
a grand jury proceeding are protected by Rule 6(e).  The D.C. Circuit rejected that
argument long ago, and this Court should reject it here.  *In re Sealed Case No. 99-
3091*, 192 F.3d 995, 1003 (D.C. Cir. 1999) (explaining that "internal deliberations of
prosecutors that do not directly reveal grand jury proceedings are not Rule 6(e)
material," and that "[i]t may be thought that when such deliberations include a
discussion of whether an indictment should be sought, or whether a particular
individual is potentially criminally liable, the deliberations have crossed into the
realm of Rule 6(e) material.  This ignores, however, the requirement that the matter
occur *before the grand jury*.  Where the reported deliberations do not reveal that an
indictment *has been* sought or *will be* sought, ordinarily they will not reveal anything
definite enough to come within the scope of Rule 6(e)." (first emphasis added)).

923 F.2d 324, 326 (4th Cir. 1991) ("This circuit has held that a newspaper has a common law right of access to affidavits supporting search warrants[.]"); *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) ("[T]he common law right of access to judicial documents may in some situations permit access to search warrant proceedings."); *but see United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (denying applicability of common law right of access to pre-indictment warrants).

Similarly, although warrants are not subpoenas issued by a grand jury, "affidavits supporting search warrants in the interval between execution of the warrants and indictment" have the potential to reveal the considerations that are before a grand jury as well as interfere with an ongoing criminal investigation. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989). Yet, a common law right of access still applies for such documents, so, *a fortiori*, it ought to apply to NDOs from a *closed investigation* that presents a substantially lower risk of disclosure of protected information. *See Matter of the Appl. of WP Co. LLC*, No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) ("Indeed, with the Campaign Finance Investigation now closed, and the prosecutions arising from this investigation widely known, the government concedes that maintaining blanket secrecy on the specific records sought from the Campaign Finance Investigation is not necessary.")

DOJ also ignores that, even if there were a legitimate concern about revealing something tangentially related to the considerations of the grand jury in a *closed investigation*, the *Hubbard* factors provide a way to balance secrecy concerns.

Specifically, these interests are addressed by fourth and fifth factors, which consider "(4) the strength of any property and privacy interests asserted; [and] (5) the possibility of prejudice to those opposing disclosure[.]" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). But here, neither factor weighs heavily in DOJ's favor. As explained in Empower Oversight's initial motion, it does not oppose reasonable redactions to the NDO motions to address any of these concerns that DOJ may have. *See* Mem. at 17 & n.9. As the Second Circuit observed in an analogous circumstance: "The presence of material derived from intercepted communications in the warrant application does not change its status as a public document subject to a common law right of access[.]" *Appl. of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990). Instead, DOJ's concerns are appropriately addressed through "careful review by a judge before the papers are unsealed." *Id.* But none of these concerns undermines the fact that the common law right of access applies here.

2. Even if the Court concludes that the common law right of access does not apply, unsealing would still be proper under Federal Rule Criminal Procedure 6(e)(6) and Local Criminal Rule 6.1, which implements Rule 6(e)(6) and states that "[p]apers, orders and transcripts of hearings … may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." LCrR 6.1. The D.C. Circuit has explained that under this rule, the "press … is not, in any event, barred from receiving non-protected details about what transpired before the court.*" Dow Jones*, 142 F.3d at 504. And, moreover, "[t]he 'denial of access,'

thus, is 'not absolute but only temporary.'"  *Id.* (quoting *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 393 (1979)).  Thus, the Court should unseal the requested motions for NDOs with appropriate redactions of protected information.

The D.C. Circuit's decision in *Dow Jones* is instructive.[5]  In that case, the court addressed requests from press organizations to access court hearings and pleadings related to a "grand jury's investigation."  142 F.3d at 498.  The court explained that court hearings on matters ancillary to grand jury proceedings are "closed *to the extent necessary* to prevent disclosure of matters occurring before a grand jury."  *Id.* at 500 (emphasis added) (quoting Fed. R. Crim. P. 6(e)(5)).  The court then explained that, under the Court's local rule (then-Rule 302), the Chief Judge of this Court has the authority to redact and unseal papers from such ancillary matters.  *Id.* at 501. Additionally, the *Dow Jones* court noted with approval that "the Chief Judge is implementing [previous] Rule 302 by redacting documents."  *Id.*  And the court explained that the "[t]he Chief Judge's adherence to [previous] Rule 302 is also demonstrated by her order ... granting the press's motion to unseal certain papers filed by President Clinton in connection with his motion for an order to show cause." *Id.*  Accordingly, it is clear that Rule 6(e) and Local Criminal Rule 6.1 do not stand as the absolute bar that DOJ suggests.

---

[5] As *Dow Jones* is the only authority DOJ identifies when suggesting (at 4) that the First Amendment right of access must give way to Rule 6(e), this is equally fatal to DOJ's arguments there.  Accordingly, DOJ fails to identify any persuasive reason for why the Court should not unseal the records pursuant to the First Amendment.  *See* Mem. at 19–23.

DOJ nonetheless claims (at 5) that redacting and unsealing is barred by the D.C. Circuit's decision in *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), but that misstates *McKeever*'s holding. *McKeever* held that courts lacked inherent authority to craft additional exceptions to Rule 6(e)'s enumerated allowances for disclosure of grand jury records. 920 F.3d at 845–46. That is undisputed but irrelevant here. Instead, if the court were to find Rule 6(e) applicable *at all*, the controlling provision would be Rule 6(e)(6), which explicitly gives the Court discretion to unseal ancillary grand jury materials when appropriate. It states: "Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). Local Criminal Rule 6.1 implements this rule and gives the Court the discretion to unseal in the circumstances present here, as explained above. Thus, the Court, "on the motion of 'any person,' or *sua sponte*, … may make publicly available 'portions' of 'transcripts' of ancillary proceedings 'upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.'" *Dow Jones*, 142 F.3d at 504 (quoting the equivalent prior Local Rule 302).

That is why "[c]ourts in this district … have regularly released filings and transcripts of proceedings ancillary to a grand jury's investigation while the ongoing investigation proceeded under close media scrutiny." *In re Press Appl. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 146 (D.D.C. 2023) ("*Press Appl. for Access*"); *see also In re*

*Grand Jury Subpoena No. 7409*, Grand Jury Action No. 18-41 (BAH), 2019 WL 2169265, at *4 (D.D.C. Apr. 1, 2019) (requiring release of redacted briefs and transcripts from a contempt proceeding against a corporation refusing to comply with a grand jury subpoena).  In fact, courts in this Circuit have held that such records *should* be released, "if … the records can be redacted to excise any secret information." *In re Cheney*, No. 23-5071, 2024 WL 1739096, at *3 (D.C. Cir. Apr. 23, 2024); *see also* Order at 1, *In re Grand Jury Subpoena,* No. 18-3071 (D.C. Cir. Apr. 23, 2019) (per curiam) ("[W]here the Rules authorize [courts] to do so, [courts] may — *and should* — release any information so long as it does not reveal" material that Rule 6(e)(6) protects.  (emphasis added)).

Although DOJ claims (at 7–8) that redactions are not possible, DOJ fails to substantiate that argument, and the Court should (at least) undertake *in camera* review of *each* NDO motion and accompanying briefing.  Upon review, Empower Oversight is confident that "discrete portions" can "be redacted without doing violence to their meaning[.]" *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006) (per curiam).  After all, "[t]he disclosure of information 'coincidentally before the grand jury [can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury.'" *Senate of P.R. v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 870 (D.C. Cir. 1981)).

Thus, the Court should fulfill its duty under Local Criminal Rule 6.1 and unseal the requested documents with appropriate redactions.

3.    Even if redaction were not possible, DOJ has publicly disclosed the underlying investigation, making unsealing proper.  The D.C. Circuit explains that "[t]he purpose in Rule 6(e) is to preserve secrecy.  Information widely known is not secret."  *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994).  Here, the underlying subpoena is "now part of the public record[.]"  *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d at 1140.  And DOJ has publicly acknowledged the underlying investigation prompting the subpoena in this case and the NDOs.[6]  Moreover, DOJ has publicly acknowledged that it is investigating the abuses of DOJ's subpoena authority as part of this investigation.[7]  These government disclosures, along with the significant media attention discussed previously, *see* Mem. at 3–4, confirms that significant grand jury information is "sufficiently widely known that it has lost its character as Rule 6(e) material."  *In re North*, 16 F.3d at 1245.

On this point, DOJ's only response (at 7) is to suggest that a different result is appropriate where a party relies on anonymously sourced news stories.  But that ignores Empower Oversight's reference to a DOJ press release in its opening motion, Mem. at 3–4 & n.5, and a news story detailing the charge of an ex-Senate aide, *id.* at 4 n.6.  These were not just reports based on anonymous sources.  As shown above,

---

[6] *See* Press Release, U.S. Att'y's Off., D.C., *Former U.S. Senate Employee Sentenced to Prison Term on False Statements Charge* (Dec. 20, 2018), https://tinyurl.com/bdz72dat; *see also* Press Release, U.S. Att'y's Off., D.C., *Former U.S. Senate Employee Indicted on False Statements Charges* (June 7, 2018), https://tinyurl.com/22xnmnx9 .

[7] *See* Off. of Inspector Gen., U.S. Dep't of Just., *Ongoing Work, Review of the Department of Justice's Use of Subpoenas and Other Legal Authorities to Obtain Communication Records of Members of Congress and Affiliated Persons, and the News Media*, http://tinyurl.com/3x4jp8s4 (last visited July 9, 2024).

DOJ itself issued press releases announcing the indictment and sentencing of this aide.  Accordingly, release of information "here … is precipitated not by uninformed 'media requests predicated on general leaks[.]'"  *Press Appl. for Access*, 678 F. Supp. 3d at 145–46 (quoting *In re N.Y. Times Co.*, 657 F. Supp. 3d 136, 152 (D.D.C. 2023), *vacated on other grounds sub nom. In re Cheney*, No. 23-5071, 2024 WL 1739096 (D.C. Cir. Apr. 23, 2024)).

Thus, Empower Oversight is not taking the indefensible position that "every public disclosure waives Rule 6(e) protections[.]"  *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007).  Instead, unsealing is proper here because DOJ's "public disclosure … alters the legal landscape in this case."  *In re Cheney*, 2024 WL 1739096, at *4; *see also Appl. of WP Co.*, 2016 WL 1604976, at *2 ("Indeed, with the … Investigation now closed, and the prosecutions arising from this investigation widely known, the government concedes that maintaining blanket secrecy on the specific records sought from the … Investigation is not necessary.").

Accordingly, the Court should apply the common law right of access and unseal the motions DOJ filed when requesting NDOs.

## B.    Disclosure is also appropriate under the Court's inherent authority.

Even if the Court concludes that unsealing is not appropriate under the common law right of access, the Court may nonetheless rely on its inherent authority to order unsealing.  *See* Mem. at 23–24.  DOJ opposes this fact, but again only in the most half-hearted of ways.  *See* DOJ Opp'n at 5.  According to DOJ, a district court has no discretionary authority to order the unsealing of "grand jury material[.]"  *Id.*

(citing *McKeever*, 920 F.3d at 850). But *McKeever* bears little resemblance to this case. Rather, *McKeever* dealt with a request that plainly fell within Rule 6(e)—a request for the "release of grand jury records" in a case that led to the indictment of a former FBI agent and CIA lawyers. 920 F.3d at 843. The D.C. Circuit noted that Rule 6(e) "'ma[de] quite clear that disclosure of matters *occurring before the grand jury* is the exception and not the rule[.]'" *Id.* at 844 (emphasis added) (quoting *Fund of Const. Gov't*, 656 F.2d at 868). As DOJ fails to show that court filings requesting NDOs are "matters occurring before the grand jury," this authority is inapposite, and it does nothing to limit this Court's discretionary and inherent authority.

Rather, it remains true that this Court may exercise its discretionary and inherent authority to unseal the NDO motions.

## CONCLUSION

Empower Oversight's motion seeks records critically important to allowing the public to see the extent to which DOJ was candid with the Court in seeking NDOs to block the disclosure of its efforts to investigate those in Congress performing oversight of the Department. In particular, the public has an important interest in understanding how DOJ characterized its requests for NDOs here, where DOJ was seeking the communications records of congressional attorneys and Members of Congress. That public interest is only heightened by the failure of DOJ in its opposition here to acknowledge and engage the serious constitutional and policy implications of its actions. Thus, the Court should allow Empower Oversight to intervene, and the Court should unseal these motions and supporting documents to allow the public additional insight into how DOJ collects data.

July 15, 2024

Respectfully submitted,

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW
Suite 900
Washington, DC 20006
Tel.: (202) 787-1060
Email: bfield@schaerr-jaffe.com

*Counsel for Empower Oversight*
*Whistleblowers & Research*